***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The defendants have shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction over this matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. On or about January 20, 2009, plaintiff was an employee of defendant-employer.
 ***********
The following were submitted to the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement.
2. Stipulated Exhibit Number 2, Medical Records.
3. Stipulated Exhibit Number 3, Industrial Commission Forms, Discovery Responses.
4. Defendants' Exhibit Number 1, Correspondence from E. Carolyn Metropol, President of defendant-employer dated March 9, 2009.
5. Defendants' Exhibit Number 2, Statement of Angela Watters, an employee with Metropolis Statuary, Inc.
6. Defendants' Exhibit Number 3, Form 18 Notice of Accident to Employer and Claim of Employee.
 ***********
The following were received into evidence by the Deputy Commissioner as:
 DEPOSITIONS
1. Oral deposition of Mark Brenner, M.D., taken on January 11, 2010.
2. Oral deposition of Douglas Dirschl, M.D., taken on January 20, 2010.
 *********** *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 32 years old. His primary language is Spanish.
2. On June 30, 2005, defendant-employer hired plaintiff as a general laborer. Defendant-employer is a garden statuary business, which manufactures cement lawn ornaments. Plaintiff's duties were to assist with mixing concrete and pouring it into concrete molds. The concrete bags weighed in excess of 50 pounds. Plaintiff also assisted with general lawn maintenance, including mowing the law, placing mulch, and performing general landscaping as necessary to help maintain the lawn.
3. Plaintiff worked approximately 35 to 40 hours per week and was paid $10.50 per hour. Pursuant to the Form 22 submitted by the parties as a Stipulated Exhibit, plaintiff's average weekly wage is $355.04, yielding a weekly compensation rate of $236.71.
4. On or about January 20, 2009, defendant-employer was closed for the day due to inclement weather. The date the office closed coincided with the weekly payday for employees. Plaintiff contacted the supervisor, Angela Walters, around noon to request his paycheck. As a result of plaintiff's request, Ms. Walters contacted Carolyn Metropol, the owner of the business. Ms. Metropol agreed to leave plaintiff's paycheck inside the business' mailbox after 3:00 p.m.
5. Ms. Metropol testified that when the business had been closed due to inclement weather on prior occasions, the paychecks were given to employees the next work day. Defendant-employer *Page 4 
did not direct plaintiff to come to pick up his check. Defendant-employer made plaintiff's paycheck available to him because he requested it and there was no benefit to defendant-employer to allow plaintiff to retrieve his paycheck.
6. At approximately 4:00 p.m. on January 20, 2009, plaintiff arrived at the business to retrieve his paycheck from the mailbox. Plaintiff parked his van and walked to the mailbox. The ground was snowy and icy. While plaintiff was walking back towards his van after retrieving his paycheck, he slipped on ice and hit his arm on the van door. Plaintiff felt immediate pain in his arm and sought medical treatment approximately four hours later.
7. The mailbox for defendant-employer and the parking area where plaintiff fell are not located on land that is owned or controlled by defendant-employer. The mailbox and the area where plaintiff parked are outside of a fence which encloses defendant-employer's property. The State of North Carolina erected that fence, and owns, controls, and maintains the area outside of defendant-employer's property where plaintiff was injured. The State of North Carolina granted to defendant-employer a right of way to allow defendant-employer to install a mailbox, to plant shrubs directly adjacent to the fence, and to allow patrons to access defendant-employer's property. Defendant-employer mows the grass outside of the fence for aesthetic purposes; that activity is allowed by the State.
8. After his fall on January 20, 2009, plaintiff presented to the Emergency Room where he was diagnosed with a recent traumatic fracture to his right elbow. Plaintiff was referred to Pinehurst Surgical for an orthopaedic evaluation.
9. On January 22, 2009, plaintiff presented to Dr. Mark Brenner, an orthopaedic surgeon at Pinehurst Surgical Clinic. A bilingual medical staff employee assisted plaintiff with communicating with Dr. Brenner, who had no independent recollection of the nature of plaintiff's recent trauma to the right elbow. According to the medical records, plaintiff reported a new *Page 5 
injury related to his recent fall down the stairs at home. Plaintiff also reported a previous injury to the elbow, which occurred years ago and was healed. Due to the complexity of plaintiff's elbow injury, Dr. Brenner referred plaintiff for an evaluation at the Orthopaedic Department at The University of North Carolina Hospital in Chapel Hill.
10. On January 28, 2009, plaintiff presented to Dr. Douglas Dirschl, Chairman of The University of North Carolina Orthopaedic Department, for evaluation of the right elbow. Dr. Dirschl utilized credentialed medical Spanish-speaking interpreters to assist in his discussions with plaintiff. Dr. Dirschl recorded a patient history of a fall occurring on January 22, 2009, which resulted in a right elbow injury. Plaintiff reported consistent moderate pain since the injury, as well as a prior right elbow fracture when he was a child that was not surgically treated. Prior to the January 2009 fall, plaintiff reported baseline limited range of motion with the right elbow. Dr. Dirschl recommended plaintiff use an arm splint for pain control and also recommended surgery.
11. On March 17, 2009, Dr. Dirschl performed surgery wherein plates and screws were utilized to secure plaintiff's fracture. Postoperatively, plaintiff's arm was kept in a sling and he was unable to perform any lifting with the right arm. Plaintiff remained under the care of Dr. Dirschl, who prescribed a course of physical therapy.
12. On April 22, 2009, plaintiff reported concerns about his inability to use his arm and that he was unable to do any heavy lifting. As a result of his elbow injury, plaintiff told Dr. Dirschle he had been unable to work.
13. On June 24, 2009, plaintiff returned to Dr. Dirschl with the inability to progress in physical therapy. Dr. Dirschl recommended plaintiff return in three months to discuss another surgery to help improve his range of motion. Dr. Dirschl testified plaintiff should undergo an *Page 6 
Independent Medical Evaluation (IME) and Functional Capacity Evaluation (FCE) to determine his physical capabilities and permanent partial impairment rating.
14. On January 26, 2009, Ms. Walters telephoned plaintiff as she had not heard from him since January 20, 2009. Plaintiff reported injuring his arm on the door of his van, but he did not explain that the injury occurred while picking up his check on January 20, 2009. After January 26, 2009, Ms. Walters telephoned plaintiff a few more times to check on his condition. During their conversations, plaintiff did not report injuring his arm at the business on January 20, 2009.
15. Plaintiff came into defendant-employer's business office on January 29, 2009 with a young male relative. Plaintiff reported injuring his arm and showed Ms. Metropol and out-of-work medical note. He also requested information about unemployment benefits. Ms. Metropol declined to provide unemployment benefit information since she had available work. During their conversation, Ms. Metropol stated that plaintiff did not report he injured his arm while picking up his paycheck on January 20, 2009. Plaintiff did not return to work with defendant-employer following his January 2009 right elbow injury. The first time Ms. Metropol learned plaintiff was alleging a work-related injury was in March 2009 upon receipt of the Form 18.
16. Dr. Dirschl opined plaintiff's January 20, 2009, fall was the proximate cause of the right arm condition in which he provided medical treatment. Dr. Brenner also opined that a fall on the ice was consistent with plaintiff's right arm injury. The undersigned find Dr. Dirschl's and Dr. Brenner's opinions are persuasive on the issue of the causation of plaintiff's injury.
17. As a result of his right elbow injury, plaintiff has been physically incapable of working since January 20, 2009. Plaintiff has limited range of motion in the right arm and is *Page 7 
unable to perform any lifting with the arm. As of the date of the hearing before the Deputy Commissioner plaintiff had not undergone an IME or FCE.
18. Plaintiff's failure to timely provide relevant medical records does not warrant the imposition of sanctions.
19. Plaintiff did not engage in stubborn, unfounded litigiousness in the prosecution of his claim.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. To be compensable under the Act, an injury must arise out and in the course of the employment. N.C. Gen. Stat. § 97-2(6). To meet the "arising out of the employment" requirement there must be a causal connection between the injury and the employment. Barham v. FoodWorld, 300 N.C. 329, 266 S.E.2d 676, rehearing denied,300 N.C. 562, 270 S.E. 2d 105 (1980).
2. An injury sustained by an employee while going to or coming from work does not arise out of and in the course of employment.Royster v. Culp, Inc., 343 N.C. 279, 470 S.E. 2d 30 (1996). In the present case, plaintiff's injury occurred while on property that was not owned, controlled, or maintained by defendant-employer and is, thus, barred by the "coming and going" rule. Id.
3. A limited exception to the "coming and going" rule applies where an employee is injured when going to or coming from work on the employer's premises. Royster, 343 N.C. at 281, 470 S.E.2d at 31. Although defendant-employer is allowed a right of way for the parking *Page 8 
area and to have a mailbox, the evidence of record is that the area where plaintiff was injured was owned, controlled, and maintained by the State of North Carolina. The Court of Appeals held in Barham
that where an employer has "no responsibility for the upkeep or maintenance" of the premises where an injury occurred, and had "no obligation or authority under its lease" to take action regarding the condition of the premises, then the premises in question are not sufficiently under the control of the employer to permit the conclusion that the premises constituted a part of the employment premises.Barham, 300 N.C. at 333, 266 S.E.2d at 679. In the instant case, the evidence of record shows that defendant-employer had no responsibility for the upkeep or maintenance of the area where plaintiff was injured, which includes the removal of ice. Id.
Plaintiff has failed to show that the parking area was sufficiently under the control of the defendant-employer to permit the conclusion that the premises constituted a part of the employment premises.Id. Because plaintiff's injuries did not occur on the employer's premises, plaintiff is not entitled to the limited exception to the "coming and going" rule that applies when an employee is injured when going to or coming from work on the employer's premises.Royster, 343 N.C. at 281, 470 S.E. 2d at 31.
4. Based on the totality of the evidence of record, plaintiff did not sustain an injury by accident while in the course and scope of his employment with defendants. N.C. Gen. Stat. § 97-2(6).
5. Plaintiff's failure to timely provide relevant medical records does not warrant the imposition of sanctions. Workers' Compensation Rules of the North Carolina Industrial Commission Rule 802.
6. Plaintiff did not engage in stubborn, unfounded litigiousness in the prosecution of his claim. N.C. Gen. Stat. § 97-88.1. *Page 9 
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Under the law, Plaintiff's claim must be, and is hereby, DENIED.
2. Each side shall bear its own costs.
This the 9th day of December, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ BERNADINE S. BALANCE COMMISSIONER *Page 1